IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PERRY BARNES, RICHARD BERGGREN, KURT DENKER, PATRICK McDOWELL, MATTHEW MILLER, DAVID RATHJEN and MICHAEL SCHMID, | ) ) ) ) ) ) ) | CASE NO. 8:07CV110 |
| Plaintiffs, | ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| CITY OF OMAHA, a municipal corporation; MICHAEL G. FAHEY, Individually and in his Official Capacity; PAUL LANDOW, Individually and in his Official Capacity and THOMAS WARREN, Individually and in his Official Capacity, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on the Defendants' Motion for Summary Judgment (Filing No. 25), and the Plaintiffs' Motion for Partial Summary Judgment (Filing No. 30). All parties agree that there are no genuine issues of material fact with respect to questions of liability in this case, although the parties hold very different views regarding the legal conclusions the Court should draw from those facts. For the reasons stated below, the Defendants' Motion for Summary Judgment will be granted, the Plaintiffs' Motion for Summary Judgment will be denied, and the Plaintiffs' action will be dismissed with prejudice.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs, Perry Barnes, Richard Berggren, Kurt Denker, Patrick McDowell, Matthew Miller, David Rathjen and Michael Schmid, were police officers employed by the City of Elkhorn ("Elkhorn"), a subdivision of the State of Nebraska, until Elkhorn was

annexed by the Defendant, the City of Omaha ("Omaha").[1] At all times relevant to this action, Defendant Michael G. Fahey ("Fahey") was the Mayor of Omaha, Defendant Paul Landow ("Landow") was Fahey's Chief of Staff, and Defendant Thomas Warren ("Warren") was the Omaha Chief of Police. (Complaint, Filing No. 1, ¶ 4; Amended Answer, Filing No. 17, ¶ 2).

The Plaintiffs filed this action on March 23, 2007, contending that Omaha annexed Elkhorn on March 24, 2005, at which time the Plaintiffs became employees of Omaha, "vested with certain rights of continued employment." (Complaint, Filing No. 1, ¶ 9). The Plaintiffs assert that Omaha terminated their employment on March 1, 2007, without due process, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. (*Id.*, ¶¶ 1, 10-11, 14). The Plaintiffs seek a permanent injunction "restoring" their employment with Omaha, and an award of compensatory and punitive damages (*id.*, ¶¶ VI 1-5).

The Defendants argue that Omaha could not effect its annexation of Elkhorn until March 1, 2007, when the mandate was issued in *City of Elkhorn v. City of Omaha*, 725 N.W.2d 792 (Neb. 2007). The Defendants note that Omaha was enjoined by order of the district court of Douglas County, Nebraska, from enforcing its annexation ordinance pending Elkhorn's appeal of the district court's ruling upholding the annexation. (Amended Answer, Filing No. 17, ¶ 9a). The Defendants further contend that the Plaintiffs' employment terminated by operation of law under Neb. Rev. Stat. § 14-124; the Plaintiffs'

---

[1]Plaintiffs' Brief in Support of Motion for Partial Summary Judgment, Filing No. 31, p.2, ¶ 4; Defendants' Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Filing No. 35, p. 1. The issue of *when* the annexation took effect for purposes of ending the Plaintiffs' status as employees of Elkhorn is in dispute.

collective bargaining agreement with Elkhorn addressed the anticipated termination of their employment as a result of annexation and gave rise to no contractual right of continued employment through Neb. Rev. Stat. § 14-118; and the individual Defendants are entitled to qualified immunity from suit.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

The Fifth Amendment to the United States Constitution states, in part: "No person shall be . . . deprived of . . . property, without due process of law." The Fourteenth Amendment states, in part, "nor shall any State deprive any person of . . . property, without due process of law." Under 42 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Municipalities and other local government units are included among those "persons" who may be liable under 42 U.S.C. § 1983, with respect to the execution of the government's policies or customs. *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 694 (1978).

The Plaintiffs rightly note that due process requires, before termination, that public employees with a property interest in their jobs be given notice of the charges against them, an explanation of the evidence, and an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542-43 (1985). Such a property interest arises from a "legitimate claim of entitlement" to continuing employment. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)("To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it").

The Plaintiffs rely on Neb. Rev. Stat. §14-118 (Reissue 1997) and language from the Nebraska Supreme Court's decision in *City of Elkhorn v. City of Omaha* to support their contention that they became employees of Omaha on March 24, 2005, and had a legitimate claim of entitlement to continuing employment on March 1, 2007. Neb. Rev. Stat. § 14-118 provides in part:

> The date of annexation or merger shall be set forth in the ordinance providing for the same, and after said date the metropolitan city shall succeed to all the property and property rights of every kind, contracts, obligations, and choses in action of every kind held by or belonging to the city or village annexed or merged with it, and the metropolitan city shall be liable for and recognize, assume, and carry out all valid contracts, obligations and licenses of any city or village so annexed or merged with the metropolitan city.

In *City of Elkhorn v. City of Omaha*, the Nebraska Supreme Court addressed the question of whether Omaha's ordinances annexing Elkhorn and adjacent property took effect before certain ordinances adopted by Elkhorn in its effort to avoid annexation:

> The district court correctly noted that Omaha's annexation ordinance became effective on March 24, 2005, and that Elkhorn's annexation ordinances would have become effective on March 30. However, Elkhorn's annexation

5

> proceedings were nullified on March 24, when it ceased to exist as a separate municipality.
>
> . . . .
>
> [W]e conclude that Elkhorn ceased to exist as a separate municipality on March 24, 2005, the date that Omaha's annexation ordinance became effective. Elkhorn's annexation ordinances were accordingly nullified before they took effect.

725 N.W.2d at 811.

The Nebraska Supreme Court *also* said:

> On March 21, 2005, the district court, with the agreement of the parties, issued a temporary injunction enjoining the enforcement of both cities' ordinances.
>
> . . . .
>
> Following a bench trial, the court rejected all of Elkhorn's claims that Omaha's [annexation] ordinance was invalid.
>
> . . . .
>
> [T]he court . . . declared that Elkhorn *would* cease to be a city of the first class as of the date the order was filed *if* Elkhorn did not file an appeal. Elkhorn filed a notice of appeal on August 19, 2005, and on the same day, the court entered a supersedeas order, enjoining both parties from enforcing their ordinances pending an appeal.

725 N.W.2d at 800-01 (emphasis added).

> A municipality that is in the crosshairs of annexation has standing to challenge the annexation. See, *County of Sarpy v. City of Gretna*, 267 Neb. 943, 678 N.W.2d 740 (2004); *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952). Elkhorn has standing.

725 N.W.2d at 807.

Therefore, although the Nebraska Supreme Court held that after March 24, 2005, Elkhorn lacked any power to issue ordinances to evade annexation, Omaha's annexation of Elkhorn was *enjoined* until the mandate was issued by the Nebraska Supreme Court on March 1, 2007.[2] Accordingly, this Court rejects the Plaintiffs' argument that they were

---

[2]The Plaintiffs acknowledge that the mandate was issued by the Nebraska Supreme Court at approximately 2:00 p.m. on March 1, 2007, and, at approximately 2:15 on the

6

employees of Omaha from March 24, 2005, through the time of their "termination" on March 1, 2007.

The question then becomes whether the Plaintiffs had any legitimate claim of entitlement to employment by Omaha on and after March 1, 2007, and, if so, whether the Defendants or any of them deprived the Plaintiffs of such a property interest without due process of law.

The Defendants argue that the Plaintiffs were "officers" of Elkhorn whose terms of office ceased by operation of Neb. Rev. Stat. § 14-124 (Reissue 1997) when the annexation of Elkhorn took effect:

> All officers of any city or village so annexed or merged with the metropolitan city, having books, papers, bonds, funds, effects or property of any kind in their hands or under their control belonging to any such city or village shall, upon the taking effect of such consolidation, deliver the same to the respective officers of the metropolitan city as may be by law or ordinance or resolution of such metropolitan city entitled or authorized to receive the same.  Upon such annexation and merger taking effect the terms and tenure of all offices and officers of any city or village so consolidated with the metropolitan city shall terminate and entirely cease except as herein otherwise provided.

*Id.*

This Court need not decide whether the Plaintiffs were "officers" of Elkhorn whose terms and tenures ceased on March 1, 2007, by operation law.  The Plaintiffs have demonstrated, at most, that they may have some contract right through their employment agreement with Elkhorn, coupled with Neb. Rev. Stat. § 14-118.  On March 1, 2007, the Plaintiffs' employment relationship with Elkhorn was governed by a Collective Bargaining

---

same day, the Plaintiffs were notified by Landow that their employment had ended, and they must deliver to Omaha all Elkhorn property in their possession.  Complaint, Filing No. 1, ¶¶ 5, 10.

7

Agreement ("CBA") between Elkhorn and the Fraternal Order of Police, Lodge No. 53, executed on September 14, 2006.[3] (Filing No. 27-13). The CBA provides in Article 13, titled "Termination/Severance":

> In the event any action is taken by any state authority or the City of Omaha, Douglas County, or any other political subdivision of the State of Nebraska for the purpose of annexing, consolidating, or merging the City of Elkhorn (hereinafter "City") or any proceedings which would result in the City no longer being an independent political subdivision of the State of Nebraska and which would result in the elimination, termination or substantially changing of the terms and conditions of employment status of law enforcement employees of the City, the employees of the City covered by this agreement shall, subject to the terms and conditions of the Article, be paid compensation equal to fifty-two (52) weeks, including all fringe benefits including insurance, to which the law enforcement employee is entitled when the action occurred; provided, however, that if during the fifty-two (52) week period the employee becomes employed as a law enforcement officer by any political subdivision of the State of Nebraska, the right to the compensation terminates at the commencement of such employment.
>
> . . . .
>
> This article shall be binding on any successor, entity, political subdivision of the State of Nebraska or any other political entity which succeeds, annexes, merges or otherwise takes over or replaces the City and any of its functions or duties; provided further, that this Article shall be automatically renewed and incorporated in any collective bargaining agreements or employment contracts between the law enforcement employee and the City until the parties agree to amend or eliminate.

To the extent that this CBA or any other agreement, coupled with Neb. Rev. Stat. § 14-118, may give the Plaintiffs a right to recover money from Omaha under a contract theory, such a claim does not form the basis of any cause of action under 42 U.S.C. § 1983. *Dover Elevator Co. v. Arkansas State University,* 64 F.3d 442, 446 (8th Cir. 1995)("It is well established that 'a simple breach of contract does not rise to the level of a constitutional deprivation.'" quoting *Medical Laundry Serv. v. Board of Trustees of Univ. Of*

---

[3] The CBA states in Article 16 that it commences on October 1, 2005, and terminates on September 30, 2006, but, unless certain notices are served prior to June 1, 2006, will continue in effect from year to year.

8

*Ala.*, 906 F.2d 571, 573 (11th Cir. 1990)); *New Madrid Sch. Dist. No. 1 v. Continental Casualty,* 904 F.2d 1236, 1241 (8th Cir. 1990)(suit based only on breach of contract involves purely state law questions and is not cognizable in federal court, absent diversity).

## CONCLUSION

The Plaintiffs have not demonstrated any legitimate claim of entitlement to employment by Omaha on or after March 1, 2007, when the mandate issued from the Nebraska Supreme Court upholding Omaha's annexation of Elkhorn.  Because the Plaintiffs have not demonstrated that they had any constitutionally protected property interest in employment by Omaha after March 1, 2007, the Defendants could not deprive the Plaintiffs of any such property interest without due process of law.  Because no constitutional violation occurred, this Court need not address questions of qualified immunity raised by the individual Defendants; judgment will be entered for the Defendants; and this action will be dismissed with prejudice.

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 25) is granted;
2. The Plaintiffs' Motion for Summary Judgment (Filing No. 30) is denied;
3. The Plaintiffs' Complaint will be dismissed, with prejudice; and
4. A separate judgment will be entered.

DATED this 5th day of November, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge